[Cite as *In re H.W.*, 2015-Ohio-3018.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: H.W.

C.A. No.     27730

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 13-7-468

DECISION AND JOURNAL ENTRY

Dated: July 29, 2015

MOORE, Judge.

{¶1} Appellant, Heather G. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the natural mother of four minor children. Only H.W., born July 13, 2013, is at issue in this case. H.W.'s father is not a party to this appeal.

{¶3} CSB first became involved with Mother in July 2008 after the birth of her first child, D.G., who was removed from Mother's custody before he was released from the hospital. CSB's complaint alleged concerns about Mother's mental health, her young age, and that the home where she resided with the maternal grandmother was not suitable for a newborn child. During that case, CSB discovered that Mother also has cognitive limitations which impaired her

ability to be reunified with D.G. After two years of case plan reunification services, Mother remained unable to provide D.G. with a suitable home and agreed to place him in CSB's permanent custody. He was later adopted by the foster mother who had been caring for him throughout that case.

{¶4} During March 2011, Mother gave birth to her second child, J.G., who was also removed from her custody before leaving the hospital. J.G. was placed in the care of the same foster mother who had adopted D.G. CSB worked with Mother on a case plan in that case for almost two years. Mother eventually agreed to surrender her parental rights to J.G., who was adopted by the same foster mother.

{¶5} CSB filed the dependency complaint in this case on July 16, 2013, three days after H.W. was born. H.W. was also removed from Mother's custody before she was released from the hospital. As in the cases involving Mother's older two children, CSB raised concerns about Mother's cognitive delays, mental health problems, and substance abuse issues.

{¶6} H.W. was initially placed with her paternal grandparents but, after an altercation with H.W.'s father, the grandparents asked that the child be removed from their home. The juvenile court later adjudicated H.W. a dependent child and placed her in the temporary custody of CSB. She was placed in the home of the same foster mother who adopted her older siblings.

{¶7} CSB developed a case plan with a goal of reunification with Mother, which again focused primarily on Mother's cognitive limitations. Among other things, the case plan required Mother to obtain a parenting assessment and follow any treatment recommendations. Mother obtained a parenting assessment, which included a recommendation that she complete parenting classes and demonstrate an ability to implement what she learned in the classes. Although

Mother completed parenting classes, CSB remained concerned that Mother was unable to understand and implement basic parenting skills.

{¶8} CSB later moved for permanent custody of H.W. By the time of the permanent custody hearing, Mother had given birth to her fourth child. Through a separate dependency case, that child was also placed in CSB emergency custody shortly after birth.

{¶9} After the permanent custody hearing, the trial court found that H.W. could not be returned to Mother's legal custody within a reasonable time or should not be placed in her custody because Mother had cognitive limitations that were so severe that she was unable to provide H.W. with a suitable home. The trial court also found that permanent custody was in the best interest of H.W. Consequently, it terminated Mother's parental rights and placed H.W. in the permanent custody of CSB. Mother appeals and raises two assignments of error, which will be addressed together because they are closely related.

I.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT'S DECISION TO TERMINATE PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT-MOTHER'S MOTION FOR LEGAL CUSTODY WHERE [CSB] FAILED TO USE REASONABLE REUNIFICATION EFFORTS TO REUNITE APPELLANT MOTHER AND HER MINOR CHILD.

{¶10} Mother argues that the trial court erred in granting permanent custody to CSB rather than placing H.W. in her legal custody. Although Mother also argues that CSB failed to make reasonable reunification efforts because it did not refer her to intensive parenting classes

that were tailored to her cognitive impairments, she failed to preserve that issue for appellate review.

{¶11} Following a review hearing at the end of April 2014, the magistrate found that Mother was engaging in case plan reunification services, that she had completed parenting classes, and that CSB had exerted reasonable efforts to prevent the continued removal of H.W. from Mother' home. The magistrate's order does not suggest that Mother challenged the reasonableness of CSB referring her to the parenting classes that she attended. Moreover, Mother filed no objections to the magistrate's findings that CSB had made reasonable reunification efforts in that regard. Consequently, she has forfeited all but plain error. *In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 24, citing Juv.R. 40(D)(3)(b)(iv). Because the record does not include a transcript of the review hearing at which this issue was decided, this Court must presume propriety of the reasonable efforts finding. *See In re T.K.*, 9th Dist. Summit No. 24006, 2008-Ohio-1687, ¶ 22.

{¶12} By the time of the permanent custody hearing, more than seven months after the trial court found that Mother had completed parenting classes and CSB's reunification efforts in that regard were reasonable, the trial court was not required to again determine whether CSB had made reasonable efforts toward reunification. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43; *In re P.W.T.*, 9th Dist. Wayne No. 11CA0020, 2011-Ohio-5858, ¶ 11; *In re K.H.*, 9th Dist. Summit No. 22765, 2005-Ohio-6323, ¶ 9-10.

{¶13} Consequently, this Court will limit its review to the propriety of the trial court's decision under the two prongs of the statutory permanent custody test. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that

the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D). *See* Former R.C. 2151.414(B)(1)[1] and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

**{¶14}** The trial court found that the first prong of the permanent custody test had been satisfied because H.W. could not be returned to Mother within a reasonable time or should not be returned to her because she had cognitive impairments that were so severe that she was unable to provide a suitable home for H.W. at that time or within the following year. *See* R.C. 2151.414(E)(2).

**{¶15}** The trial court heard testimony that Mother has a full scale IQ of 67 and functions at the level of an eight or nine-year-old child. The psychologist who evaluated Mother testified that her math and reading abilities are even lower than her IQ. Mother is unemployable because her cognitive limitations are so severe and, for that reason, she receives social security disability benefits. Because Mother cannot manage her own finances, her disability check and all of her bills are handled by a designated payee.

**{¶16}** Mother's cognitive limitations are further complicated by mental health problems. She has been diagnosed with dependent personality disorder, which is characterized by her history of involving herself in problematic relationships and allowing people to take advantage of her, including some paramours who were involved in criminal activity. During 2011, Mother

---

[1] R.C. 2151.414(B)(1) was amended effective September 17, 2014.

became involved in criminal activity with one man, leading to convictions of forgery, receiving stolen property, and identity fraud.

{¶17} The psychological expert further opined that Mother lacked the cognitive ability to provide for the basic needs of a child. Her opinion focused on Mother's cognitive delays and the fact that Mother had permanently lost custody of two other children after working case plans that included parenting classes and other reunification services. The expert opined that, even with more reunification services, Mother's prognosis was poor. She explained that Mother's lack of understanding and insight would not improve over time and that she could provide a suitable home for a child only if she had a dependable support system to provide daily parenting assistance and to continually monitor the child's wellbeing. The evidence demonstrated that Mother did not have an adequate family support system and there were no such resources available to Mother in the community, so the expert recommended that CSB consider placing H.W. with a relative. Although Mother had relied on the maternal grandmother for assistance, the grandmother had developed chronic health problems that prevented her from providing the needed support. Moreover, the maternal grandmother had been unwilling to work with the caseworker or guardian ad litem or to allow them into her home.

{¶18} There was ample evidence before the trial court to demonstrate that Mother's cognitive limitations were so severe that she was unable to provide H.W. with a suitable home. Although Mother had given birth to four children, she had never cared for any of them in her own home, as each had been placed in CSB custody shortly after birth. After more than five years of working reunification case plans in three separate dependency cases, focusing on the same parenting obstacles, Mother had been unable to demonstrate that she could care for any of her children, even during supervised visits.

{¶19} Next, the trial court was required to find that permanent custody was in the best interest of H.W. Although Mother argued at the hearing and on appeal that the trial court should have instead extended temporary custody or granted her legal custody of H.W., those dispositional alternatives likewise focus on the best interest of the child. If the evidence demonstrated that permanent custody was in the child's best interest, then any alternate disposition was not. *In re Ma.P.*, 9th Dist. Medina No. 14CA0110-M, 2015-Ohio-2088, ¶ 12; *In re I.A.,* 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10.

{¶20} Consequently, this Court conducts a single best interest review under the factors set forth in R.C. 2151.414(D). *See In re I.A.* at ¶ 10. When determining a child's best interest under R.C. 2151.414(D), the juvenile court must consider all the relevant enumerated factors: the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶21} The interaction and interrelationship between Mother and H.W. was limited to supervised visits that were held twice a week. Although Mother visited H.W. regularly, she was not affectionate and did not tend to interact with her but was usually using her cell phone. The caseworker testified that she repeatedly told Mother to stop using her cell phone and to interact with H.W. The guardian ad litem testified that the paternal grandparents would supervise Mother's visits and that the grandmother was providing most of the care for the child.

{¶22} Because H.W. was only one year old at the time of the hearing, the guardian ad litem spoke on her behalf. The guardian gave her opinion that permanent custody was in H.W.'s best interest because Mother lacked the ability to provide her with a suitable home, despite the fact that she had received reunification services from CSB for several years.

**{¶23}** By the time of the hearing, H.W. has spent her entire seventeen-month life living outside of Mother's custody and was in need of a legally secure permanent placement. She had spent most of that time living with her two older siblings in the home of the foster mother who had adopted them. The foster mother was also interested in adopting H.W. CSB had been unable to find a suitable relative to provide a permanent home for H.W. and neither parent was able to do so. Therefore, the trial court reasonably concluded that a legally secure permanent placement would only be achieved by granting CSB permanent custody so that H.W. could be adopted and that permanent custody was in her best interest. Mother's assignments of error are overruled.

### III.

**{¶24}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

DAWN M. KING, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Attorney at Law, for Guardian ad litem.