[Cite as *In re J.P.*, 2016-Ohio-6.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| J.P., et al. | : | CASE NOS. CA2015-08-145<br>CA2015-08-146<br>CA2015-08-147 |
| | : | |
| | : | O P I N I O N<br>1/4/2016 |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2013-0378

Dawn Garrett, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, guardian ad litem for Ju.P and Jo.P.

Nicole Stephenson, 30 North "D" Street, Hamilton, Ohio 45013, guardian ad litem for Ja.P

Heather A. Felerski, P.O. Box 181342, Fairfield, Ohio 45014, for appellant, N.P.

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

**RINGLAND, J.**

{¶ 1} Appellant, the biological mother (Mother) of Ja.P., Ju.P., and Jo.P., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her children to appellee, the Butler County Department of Job and Family Services (BCDJFS). For the reasons detailed below, we affirm.

**{¶ 2}** On July 30, 2012, BCDJFS filed a complaint alleging Ja.P., as well as two of his siblings not involved in the present appeal, were abused, neglected, and dependent children.[1] The complaint alleged several instances of erratic behavior that Mother had exhibited affecting the safety of her children. Specifically, the complaint alleged that Mother had repeatedly struck Ja.P. with a shoe, which caused bruises and injuries to his back. In addition, the agency also included reports of substandard living conditions and incidence of alcohol abuse. There was also a report that one of Mother's other children had been sexually abused while the children were staying with another individual while Mother was incarcerated. Furthermore, during the BCDJFS investigation, the agency reported that Mother was evasive regarding the location of her children and there were allegations that Mother was intending to take Ja.P. and "hide out with him in Cincinnati somewhere." Ja.P. was later found to be a dependent child and the agency created a case plan for reunification, which included the completion of a psychological evaluation, parenting classes, and a substance abuse assessment.

**{¶ 3}** On July 11, 2013, Ju.P. and Jo.P. were born and BCDJFS filed a complaint alleging dependency the following day. That complaint alleged that Mother had three children placed in the temporary custody of BCDJFS and that Mother has exhibited aggressive and unstable behaviors on several occasions. Furthermore, the complaint stated that Mother had not satisfactorily completed the agency recommended mental health treatment and may be suffering from mental illness. At the dispositional hearing, Ju.P. and Jo.P. were found to be dependent children and placed in the temporary custody of BCDJFS.

**{¶ 4}** Over the next several months, Mother did regularly attend visitation with the children and attended some treatment sessions to better deal with her anger management

---

1. The two children not involved in the present appeal were placed in their father's legal custody.

issues. However, the record reflects that those attempts had little impact on Mother's behavior. Throughout the pendency of these proceedings, Mother was arrested on at least four occasions for various criminal offenses, including criminal damaging, assault, and child endangering. In December 2014, Mother purposely rammed her car into another vehicle full of people, including a child, which led to her conviction for child endangering and a three month period of incarceration. Upon her release from prison, Mother moved to Virginia and stopped attending visitation with the children. Mother also failed to reengage in counseling.

{¶ 5} On January 20, 2015, BCDJFS moved for permanent custody. At the permanent custody hearing, Mother acknowledged that she currently has no home and was staying with an uncle and other individuals who she refused to identify. Although Mother stated that she was not currently ready to care for the children, she believed that she could progress with the case plan in the hopes that one day the children could be placed in her custody. In the alternative, Mother requested that the children be placed in the custody of Helen Allen, a distant relative who filed a motion for legal custody on the date of the final hearing.

{¶ 6} In support of the grant of permanent custody, BCDJFS introduced the testimony of a BCDJFS caseworker. The caseworker testified that the agency has concerns with reunification because Mother has continued to exhibit the same behaviors that led to the removal of the children, including concerns with Mother's mental health, ability to safely parent, make good choices, and ensure the safety of the children. The agency also has continued concerns with Mother's violent outbursts, arrests, and periods of incarceration. The caseworker explained that during the time the children have been in BCDJFS care, they have bonded in the respective placements, and it is in the children's best interest to establish permanency.

{¶ 7} The foster father of Ju.P. and Jo.P. (Foster Father) also testified at trial. During his testimony, Foster Father explained that Ju.P. and Jo.P. are well-bonded with the family and are an integral part of the family dynamic. Foster Father also testified that Ju.P. and Jo.P. exhibited troubling behavior when they attended visitation with Mother, which included fits of screaming. Since Mother stopped visiting them, Ju.P. and Jo.P. have not returned to that behavior. Foster Father also testified that the family would seek adoption if BCDJFS were granted permanent custody.

{¶ 8} Following the presentation of evidence, the magistrate issued a decision granting permanent custody in favor of BCDJFS. Mother did not file objections to the magistrate's decision and the juvenile court adopted the decision granting permanent custody. Mother now appeals the juvenile court's decision, raising one assignment of error for review.

{¶ 9} THE TRIAL COURT'S DECISION TO PLACE THE CHILDREN IN THE PERMANENT CUSTODY OF BUTLER COUNTY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶ 10} In her sole assignment of error, Mother argues the juvenile court's decision granting permanent custody of the children to BCDJFS was not in their best interest and the juvenile court's decision was not supported by clear and convincing evidence. After a thorough review of the record, we find Mother's assignment of error is without merit.

{¶ 11} As an initial matter, we note that Mother did not file objections to the magistrate's decision, and therefore, has forfeited all except plain error. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231, CA2014-11-236, CA2014-11-237, and CA2014-11-238, 2015-Ohio-1343, ¶ 18; *In re H.W.*, 9th Dist. Summit No. 27730, 2015-Ohio-3018, ¶ 11. Juv.R. 40(D)(3)(b)(iv). Before a natural parent's constitutionally protected liberty interest in the care

- 4 -

and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.*

{¶ 12} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

**{¶ 13}** In the present case, the juvenile court found by clear and convincing evidence that the children had been in the temporary custody of BCDJFS for more than 12 months of a consecutive 22-month period as of the date the agency filed for permanent custody. Mother does not dispute this finding. Rather, she contests the juvenile court's finding that granting permanent custody of the children to BCDJFS was in their best interest.

**{¶ 14}** R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 15}** In granting the motion for permanent custody, the juvenile court considered the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that although Mother has attended the majority of visitations during the pendency of this case, her visitations have been suspended due to intervening criminal charges and incarceration. When Mother was released from a three-

month incarceration period, she chose to move to Virginia and stopped contacting the children. As of the date of the permanent custody hearing, Mother had not contacted the children for nearly six months. Furthermore, the record also establishes that Ju.P. and Jo.P. have been in the custody of BCDJFS since they were one-day old and are well-adjusted with their foster family.

{¶ 16} In consideration of R.C. 2151.414(D)(1)(b), the guardians ad litem (GAL) recommended granting permanent custody in favor of BCDJFS. Both GALs referenced Mother's aggressive and out-of-control behavior, as well as the need to provide the children with permanency and stability, which Mother has been unable to provide.

{¶ 17} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed the custodial history of the children. The court found the children have been in the temporary custody of BCDJFS for more than 12 months of a consecutive 22-month period according to the statutory definition. Ja.P. has been in the temporary custody of BCDJFS since July 2012, while Ju.P. and Jo.P. have been in temporary custody since July 2013.

{¶ 18} In considering R.C. 2151.414(D)(1)(d), the juvenile court found the children are in need of a legally secure placement, the agency can provide the necessary legally secure placement, and such placement is the only way the children's needs can be achieved. The juvenile court found that Mother is not in a position to assume her parental responsibilities. Mother acknowledged that she had no home and is staying with an uncle and other individuals who she refused to identify. Although Mother testified that she would be able to care for the children at a later time, she acknowledged that she was not presently in a position to care for the children.

{¶ 19} Throughout the pendency of these proceedings, Mother has continued to engage in inappropriate behaviors that have led to incarceration at various times. As

previously noted, Mother was convicted of child endangering after she became angry and rammed her car into another vehicle. In addressing this concern, the juvenile court noted that "this is simply one more violent incident in a number of incidents that Mother has engaged in throughout her lifetime." Upon her release from prison, Mother failed to reengage with counseling or address her mental health issues, and instead chose to move to Virginia because she was "messed up in the head" from dealing with BCDJFS.

{¶ 20} With respect to Mother's argument that the juvenile court should have granted legal custody to petitioner Helen Allen, the juvenile court noted that a motion for custody had been filed on the day of the permanent custody trial, but that motion was untimely and not served on the parties. Furthermore, the record reflects that Allen had not completed an approved interstate home study. Finally, based on Mother's own testimony at the final hearing, Allen had never met the children.[2] Considering this evidence, the juvenile court found that the issues leading to the removal of the children had not been rectified over the nearly three years of BCDJFS involvement with Mother and the children's need for permanent placement could only be achieved through a grant of permanent custody to the agency.

{¶ 21} Finally, with respect to R.C. 2151.414(D)(1)(e), the juvenile court found that Mother has not had any contact with the children for more than 90 days and has abandoned them as a matter of law.

{¶ 22} Based on these findings the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to BCDJFS. We have carefully and thoroughly reviewed the evidence in this case and find that the

---

2. The record is unclear as to the nature of the relationship between Allen and the children. According to Mother's testimony, Allen is "the first cousin or something like that" to the children's paternal grandmother.

juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and the juvenile court's decision did not amount to plain error. At the time of the permanent custody hearing, Ja.P. had been in the custody of the agency for approximately 35 months and Jo.P. and Ju.P. had been in the custody of the agency for more than 22 months. While Mother maintains that she can provide for the children if given additional time to deal with her issues, we find the present situation is appropriate for a grant of permanent custody to BCDJFS.

{¶ 23} In so holding, we note that throughout these lengthy proceedings, Mother has continued to engage in the inappropriate behaviors that led to the BCDJFS involvement. Among other things, the juvenile court considered Mother's anger issues, which has led to criminal charges, incarceration, and an inability to adequately care for the children. While in agency care, the children will be afforded legally secure placement that cannot otherwise be obtained without a grant of permanent custody to the agency. In light of the foregoing, we find the juvenile court's decision was supported by the evidence and we find no error in the juvenile court's decision to grant permanent custody of the children to BCDJFS. Mother's sole assignment of error is overruled.

{¶ 24} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.