[Cite as *In re T.G.*, 2020-Ohio-4802.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: T.G.

C.A. No.     29658

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 18 03 0185

DECISION AND JOURNAL ENTRY

Dated: October 7, 2020

HENSAL, Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed the child T.G. in the permanent custody of appellee Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother is the biological mother of T.G. (d.o.b. 10/7/17). The child's paternity has not been established. T.G. was born at 28 weeks' gestation and exhibited intensive medical needs. Mother failed her first 24-hour test during which she was to provide for the child's care in the hospital. Although she passed her second attempt, she did so by remaining awake the entire period, which would be unsustainable for ongoing care for the child. Hospital personnel expressed concerns to CSB regarding Mother's limited visits with the child at the hospital, as well as Mother's demonstrated lack of understanding regarding the child's required care. Based on those

concerns, Mother's lack of stable housing, suspected low cognitive functioning, and her significant history with the agency regarding two other children, CSB filed a complaint alleging that T.G. was a neglected and dependent child. CSB obtained emergency temporary custody of the child upon his release from the hospital. Due to timing requirements, the agency's first complaint was dismissed and immediately refiled.

{¶3} At the adjudicatory hearing, CSB dismissed both allegations of neglect and one allegation of dependency. Mother stipulated that T.G. was a dependent child pursuant to Revised Code Section 2151.04(C) and (D). The finding of dependency based on subsection (D) was based on the 2009 termination of Mother's parental rights regarding another infant who suffered from the same medical condition and fragility as T.G. The older sibling was diagnosed with Lowe's Syndrome ("Lowe's"), a rare genetic disorder. Medical professionals suspected that T.G. also suffered from Lowe's.

{¶4} CSB filed a proposed case plan. The limited objectives included that Mother obtain and maintain safe and stable housing and verifiable income to meet the child's basic needs; that Mother obtain a mental health assessment, follow all recommendations, and demonstrate greater insight; and that any alleged father express an interest in the child's life.

{¶5} At the initial dispositional hearing,[1] the parties present stipulated to an order placing T.G. in the temporary custody of CSB. While the parties further agreed to the juvenile court's adoption of the proposed case plan, the magistrate sua sponte ordered the agency to supplement the case plan with the following objectives: 1. CSB shall facilitate a genetic assessment of the child to determine if he has Lowe's; 2. CSB shall consider Mother's schedule when setting the child's

---

[1] The first dispositional hearing was relevant only to Mother, as no alleged father was present to waive defects in the service of the case plan. The dispositional hearing was continued to address any alleged father.

appointments; 3. Mother shall attend all of the child's medical and therapeutic appointments, and demonstrate the understanding and ability to meet the child's special needs; 4. CSB shall ensure that Mother's mental health assessment includes a cognitive assessment; and 5. CSB shall investigate other agencies which might help Mother to care for the child, including financial subsidies, transportation, and direct care services. The magistrate then found that CSB had used reasonable efforts to prevent the continued removal of the child from Mother, specifically noting that the agency had facilitated services for Mother even prior to the dispositional hearing. Even so, the magistrate required that '[f]uture reasonable efforts determinations must include consideration of needs-specific efforts." The juvenile court adopted the magistrate's decision, and no party filed objections.

{¶6} During the continuation of the dispositional hearing, the magistrate noted that no party had objected to the court's sua sponte proposed additions to the case plan. Therefore, the magistrate adopted the case plan with those amendments and ordered CSB to file an amended case plan immediately, reflecting those added objectives. The magistrate further ordered the agency to transition visitation into Mother's home with the necessary in-home services. The magistrate again found that the agency had used reasonable efforts to prevent the continued removal of the child based on its referrals for in-home services for Mother. The juvenile court adopted the magistrate's decision, and no party filed objections.

{¶7} At a review hearing approximately three and a half months later, the magistrate noted that CSB had failed to file the previously ordered amended case plan. Nevertheless, the magistrate found that the agency had again used reasonable efforts to prevent the continued removal of the child from his home based on its efforts to assess Mother's caregiving abilities and to assist Mother in improving those abilities. Substantively, the magistrate noted that T.G. was

then in his fourth foster home, that Mother had a job and an apartment, and that CSB had been decreasing the level of supervision during visitations. No party moved to set aside the magistrate's order.

{¶8} A month later, CSB filed its amended case plan. The objectives included: 1. CSB shall schedule a genetic assessment of the child to confirm his suspected Lowe's diagnosis; advise Mother to obtain genetic counseling regarding future pregnancies; consider Mother's schedule when setting the child's appointments and notify Mother promptly; and investigate other agencies to assist Mother in caring for the child, including financial subsidies, transportation, and direct care services; 2. Mother shall obtain and maintain safe and stable housing and verifiable income to meet the child's basic needs; 3. Any alleged father shall contact CSB to establish a relationship with the child; and 4. Mother shall submit to a mental health assessment, including a cognitive assessment; follow all recommendations; and demonstrate improved understanding and insight.

{¶9} At the next review hearing, CSB presented evidence confirming T.G.'s Lowe's diagnosis, which includes a diagnosis of a very rare subcategory of the condition. Mother had begun acknowledging the child's diagnosis, but she needed more information from the geneticist to understand its implications. Mother's visitations had been successful enough that the agency increased each of the two weekly visits by one and a half hours. In addition, in lieu of supervised visits, five hours each week were merely monitored, while two hours were completely unsupervised. The magistrate found that CSB had used reasonable efforts to prevent the child's continued removal based on its provision of bus passes for Mother, referral and payment of a

parenting evaluation[2] for Mother, and its supervision and monitoring of Mother's visitations. No party moved to set aside the magistrate's order.

{¶10} A couple months later, the magistrate held another review hearing. Based on evidence that both the psychologist who conducted Mother's parenting evaluation and cognitive assessment and Mother's in-home parenting instructor from Fast Track agreed that the child should never be left alone with Mother due to her cognitive limitations and inability to recognize risks to the child, the magistrate ordered that Mother's visits would become fully supervised. The magistrate again made a reasonable efforts finding, citing CSB's supervision of visits, payment for Mother's parenting evaluation, facilitation of in-home parenting assistance for Mother, and provision of bus passes for Mother to and from service providers. No party moved to set aside the magistrate's order.

{¶11} After the case had pended for 11 months, Mother filed a motion for, alternatively, legal custody, legal custody with protective supervision, or a first six-month extension of temporary custody. CSB filed a motion for permanent custody.[3] As its sole first-prong ground, the agency alleged that T.G. could not be placed with either parent within a reasonable time or should not be placed with his parents, pursuant to Section 2151.414(B)(1)(a). In support of its first-prong allegation, CSB alternatively alleged: 1. "After reasonable case planning and diligent efforts by [CSB], the parents have continuously and repeatedly failed to substantially remedy the conditions that caused placement[,]" pursuant to Section 2151.414(E)(1); 2. Mother's parental

---

[2] It was later explained that a parenting evaluation at Summit Psychological Associates was the only available option for a cognitive assessment, as that evaluation contains a cognitive component. No other agencies could facilitate a cognitive assessment for Mother.

[3] The agency's motion for permanent custody was not included in the record for this Court's review. We granted the parties' joint motion to supplement the appellate record with CSB's motion for permanent custody which bore a time-stamp indicating its filing in the juvenile court on February 11, 2019.

rights regarding another child were previously involuntarily terminated, and Mother has not demonstrated by clear and convincing evidence her ability to provide a legally safe and secure placement for T.G., pursuant to Section 2151.414(E)(11); and 3. Mother, for any reason, is unwilling to provide for the basic needs of the child, or to prevent the child from suffering abuse or neglect, pursuant to Section 2151.414(E)(14).

{¶12} Due to the unavailability of a key agency witness, the permanent custody hearing was not concluded until nine months after CSB filed its motion. In the interim, the magistrate held one additional review hearing. CSB requested modifying Mother's visitation from five hours a week at home to one hour a week at the Family Interaction Center based on the agency's policy to terminate in-home visits to reduce the threat to caseworkers after the filing of a permanent custody motion. In addition, the magistrate noted that CSB believed that minimal visitation was appropriate because the child's permanency goal was no longer reunification. The magistrate agreed that supervised visitation at the agency center was now appropriate, but rejected CSB's request to limit Mother's time with the child. Accordingly, the magistrate ordered that Mother would continue to have five hours of visitation per week. In addition, the magistrate found that CSB had used reasonable efforts both to finalize a permanency plan and to prevent the continued removal of T.G. from Mother's care. The reasonable efforts finding was premised on evidence of CSB's having provided "extensive services, and opportunities for education regarding the child's needs, in addition to supervising bonding time with the child." Moreover, the magistrate found that "[t]he agency has given the mother time to determine her own wishes for placement, and ha[s] used extensive efforts to locate a foster placement able to meet the child's needs." No party moved to set aside this magistrate's order.

{¶13} The juvenile court heard evidence regarding the pending dispositional motions over the course of four days. At the conclusion of the hearing, the juvenile court found that it was in the best interest of T.G. that he be placed in the permanent custody of CSB. The trial court further found that the child could not or should not be placed with either parent based on various Section 2151.414(E) factors. Specifically, citing subsection (E)(1), the juvenile court found that the child's father had never been identified, had abandoned T.G., and had demonstrated a lack of commitment to the child.[4] As to Mother, the juvenile court found both that Mother's parental rights had previously been involuntarily terminated as to another child pursuant to subsection (E)(11); and that, despite "diligent case planning" by the agency, Mother had failed to remedy the conditions that brought T.G. into care pursuant to subsection (E)(1), as Mother "remains unprepared to meet [the child's] special medical needs." The juvenile court did not find that CSB had proven its alternative basis for its first-prong ground pursuant to subsection (E)(14).

{¶14} The juvenile court denied Mother's alternative dispositional motions, terminated Mother's and any alleged father's parental rights, and placed T.G. in the permanent custody of CSB. In addition, the trial court found that CSB "ha[d] made reasonable efforts to prevent the child's continued removal from Mother by making referrals for case plan services, providing visitation and information regarding the child's medical appointments and condition." Mother has timely appealed. She raises one assignment of error for review.

---

[4] Lack of commitment is a subsection (E)(4) factor, while abandonment is a subsection (E)(10) factor, neither of which was alleged in CSB's motion for permanent custody. Subsection (E)(1) was, however, alleged. As the case plan required any alleged father to contact CSB to establish a relationship with the child, the lack of the establishment of any father-child relationship properly constituted a failure to remedy the conditions that brought the child into care pursuant to subsection (E)(1).

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR IN GRANTING PERMANENT CUSTODY TO SUMMIT COUNTY CHILDREN'S SERVICES [BOARD] WHEN CSB FAILED TO PROVIDE REASONABLE REUNIFICATION EFFORTS.

{¶15} Mother argues that the juvenile court erred by granting permanent custody of T.G. to CSB when the agency failed to make reasonable efforts to reunify the child with Mother. For the following reasons, Mother's argument is not well taken.

{¶16} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D). *See* R.C. 2151.414(B)(1) and (2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶17} CSB alleged as its sole first-prong ground that T.G. could not or should not be placed with his parents. Section 2151.414(E) states, in pertinent part:

> In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * *, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

* * *

{¶18} The juvenile court need only find that one of the alleged 16 Section 2151.414(E) factors existed to support its first-prong finding that the child cannot or should not be placed with his parents pursuant to Section 2151.414(B)(1)(a). *In re L.A.*, 9th Dist. Summit No. 21531, 2003-Ohio-4790, ¶ 54. Only subsection (E)(1) imputes a burden on the agency to use "reasonable case planning and diligent efforts." Subsection (E)(11) requires only that the agency prove the prior involuntary termination of parental rights regarding the child's sibling. At that point, the statutory burden shifts to the parent to prove her ability to provide a legally secure placement for the child. *See In re A.L.*, 9th Dist. Summit Nos. 28345 and 28347, 2016-Ohio-8504, ¶ 11.

{¶19} In this case, the juvenile court premised its first-prong finding on both subsection (E)(1) and (E)(11), two of the three (E) factor grounds alleged by CSB. Mother has not challenged the subsection (E)(11) finding that her parental rights were previously involuntarily terminated as to T.G.'s older brother D.G., and that she failed to prove her ability to care for the similarly situated T.G. The record supports the juvenile court's subsection (E)(11) finding.

{¶20} D.G.'s juvenile court records, evidencing his adjudication and ultimate placement in the permanent custody of CSB after a hearing contested by Mother, were admitted by the juvenile court as an exhibit. Moreover, the evidence in this case demonstrated Mother's inability to provide a safe and stable permanent home for T.G., based on her lack of stable housing and income to meet the child's basic needs, her recent failure to visit the child, and her admitted lack of understanding regarding Lowe's despite the prevalence of the syndrome in her family and her attendance at the child's medical appointments. Because the juvenile court relied on the unchallenged subsection (E)(11) finding, in addition to its (E)(1) finding, in determining that T.G. could not or should not be placed with his parents, this Court need not consider whether CSB used reasonable case planning and diligent efforts to assist Mother in remedying the conditions that led to the child's removal. *See In re L.A.* at ¶ 54.

{¶21} Mother's argument fails for a second reason, as well. Specifically, she failed to challenge any of the juvenile court's reasonable efforts findings below.

{¶22} It is well settled that "although [the agency] is required to prove that it put forth reasonable efforts toward reunification, [Section] 2151.419 requires it to do so at several stages of the proceedings, but not at the permanent custody hearing." *In re B.C.*, 9th Dist. Summit Nos. 24308 and 24309, 2008-Ohio-6130, ¶ 25, citing *In re K.H.*, 9th Dist. Summit No. 22765, 2005-Ohio-6323, ¶ 9-10. *Accord In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43. In this case, the magistrate found that CSB had made reasonable efforts to assist Mother's reunification with T.G. on at least six occasions prior to the permanent custody hearing. Mother failed to object to or move to set aside any prior finding. Accordingly, she has "forfeited any challenge to [the agency's] use of reasonable efforts on appeal, save for a claim of plain error." *In re G.B.*, 9th Dist. Lorain Nos. 19CA011599 and 19CA011600, 2020-Ohio-3220, ¶ 42. To demonstrate plain error,

Mother must show both trial court error and resulting prejudice. *Id.*, citing *In re F.B.*, 9th Dist. Summit Nos. 28690 and 28985, 2019-Ohio-1738, ¶ 30. As the appellate record contains no transcripts of any proceedings at which the magistrate found the agency's use of reasonable efforts, this Court "must presume propriety of the reasonable efforts findings." *In re B.C.* at ¶ 26. *See also In re H.W.*, 9th Dist. Summit No. 27730, 2015-Ohio-3018, ¶ 11. Accordingly, Mother has not established the trial court error necessary to this Court's finding of plain error.

{¶23} Third, this is not a case in which CSB failed reasonably to assist Mother in her efforts to reunify with T.G. Mother's reliance on *In re H.S.*, 9th Dist. Summit Nos. 28944 and 28948, 2018-Ohio-3360[5], is misplaced, as this Court distinguishes that case from the instant one.

{¶24} In *In re H.S.*, the sole first-prong ground found by the juvenile court was that the children had been in the temporary custody of CSB in excess of 12 of the prior 22 months. 2018-Ohio-3360, at ¶ 10. Unlike other Section 2151.414(B)(1) grounds, the agency may not move for permanent custody on the basis of subsection (B)(1)(d) "12 of 22" grounds if it was required and yet "has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home." R.C. 2151.413(D)(3)(b). *See also In re H.S.* at ¶ 15. As explained above, no such limitation exists when the agency alleges, as it did in the case of T.G., a prior involuntary termination of parental rights in support of its Section 2151.414(B)(1)(a) first-prong ground.

{¶25} In addition, while both the mother in *In re H.S.* and Mother in this case evidenced cognitive limitations affecting their respective abilities to parent, CSB did not implement the same

---

[5] After reversal and remand, the juvenile court again granted permanent custody of the subject children to CSB. This Court again reversed and remanded after concluding that the agency again had not used the required reasonable efforts to assist the parents with reunification. *In re H.S.*, 9th Dist. Summit No. 29401, 2019-Ohio-4334.

efforts in both cases. In *In re H.S.*, the case plan required the agency to facilitate one-on-one parenting instruction for the mother with the children present. That service was to be provided by a Fast Track instructor during in-home and out-of-home visits. The Fast Track instructor, however, was unable to accommodate the visitation schedule and, therefore, was unable to work with the mother. CSB made no effort to provide a different instructor or alternatively timed visits to facilitate the mother's one-on-one services.

{¶26} In the instant case, however, CSB facilitated multiple services to address Mother's cognitive limitations. The agency made a referral to Fast Track for one-on-one parenting assistance for Mother. The Fast Track instructor worked with Mother for five and a half months, nearly twice the time that agency typically works with parents. Most of the Fast Track sessions took place during Mother's in-home visitation with the child, although the instructor also attended some of the child's medical appointments with Mother. In addition, CSB referred Mother to Ohio Guidestone, where a therapist worked with her to address coping and problem-solving skills. The therapist addressed those concerns within the context of parenting issues like childcare plans, discipline, and even Lowe's. The Ohio Guidestone therapist also met with Mother approximately three times while Mother was with the child.

{¶27} Moreover, CSB ensured that the child's medical appointments coordinated with Mother's schedule and that Mother was aware of all appointments. Given the child's intensive medical needs, direct information from medical professionals who could answer Mother's questions was key to her understanding of the care required by T.G. Mother attended all of the child's appointments, with the further assistance of bus passes provided by the agency. Accordingly, unlike the mother in *In re H.S.* who received no services designed to address her

cognitive limitations, Mother was the beneficiary of multiple individualized services designed to facilitate her understanding of the child's needs and ability to provide for them.

{¶28} This Court notes that the magistrate expressed concerns regarding other issues in addition to Mother's cognitive abilities, as well. Specifically, the juvenile court ordered CSB to facilitate genetic testing to verify the child's medical condition, as well as genetic counseling for Mother regarding any future children. The child's Lowe's was confirmed, and Mother had the opportunity to meet with the geneticist. The agency was also directed to identify and facilitate any other services to assist Mother. CSB provided bus passes to help Mother with transportation, and it facilitated intensive individualized services for Mother via Fast Track, Ohio Guidestone, and the opportunity to attend all of the child's medical appointments. Accordingly, Mother has failed to substantiate her claim that CSB failed to use reasonable efforts to assist her in reunifying with T.G.

{¶29} In conclusion, Mother failed to challenge an alternative Section 2151.414(E) finding, which did not implicate reasonable efforts by the agency. She failed to object to any prior reasonable efforts findings made by the trial court. In the absence of the relevant transcripts, this Court is compelled to presume the propriety of those findings. Notwithstanding the lack of a proper challenge before this Court, we nevertheless note the use of reasonable efforts by CSB to assist Mother in her reunification attempt. Mother's assignment of error is overruled.

III.

{¶30} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

14

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

BARBARA J. ROGACHEFSKY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.