**[Cite as *In re C.W.*, 2021-Ohio-4156.]**

STATE OF OHIO        )             IN THE COURT OF APPEALS
                      )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: C.W.                           C.A. Nos.     29974
      B.M.                                29978

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 18-11-1179
                     DN 18-11-1180

DECISION AND JOURNAL ENTRY

Dated: November 24, 2021

---

CARR, Presiding Judge.

{¶1} Appellants, A.W. ("Mother") and B.M. ("Father") appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights. This Court affirms.

I.

{¶2} Mother is the biological mother of C.W., born June 21, 2010; and B.M., born December 14, 2012. Father is the biological father of only B.M. The father of C.W. was not involved in the child's case.

{¶3} On November 27, 2018, Summit County Children Services Board ("CSB") filed complaints to allege that C.W. and B.M. were abused, neglected, and dependent children. The children were removed from the home by the police pursuant to Juv.R. 6 after an incident of domestic violence between Mother and Father. When authorities arrived at the home to arrest

Father, they discovered that the home was deplorable and had numerous safety concerns, including exposed wiring, mold, and a leaky ceiling. Mother also reported that Father's violence against her had been ongoing; that the older child, C.W., sometimes tried to intervene; and that Father also verbally abused C.W. The complaint further alleged that Mother had lost legal custody of three other children in 2009, in prior juvenile cases based on concerns about domestic violence, as well as Mother's drug use and mental health.

{¶4} During February 2019, C.W. and B.M. were adjudicated abused, neglected, and dependent children and were later placed in the temporary custody of CSB. The case plan focused on both parents addressing their mental health and substance abuse problems. Over the next two years, however, neither parent consistently engaged in any treatment. They also failed to regularly visit their children or maintain contact with the caseworker or guardian ad litem.

{¶5} For the first year of this case, the children resided with the maternal grandparents. On November 6, 2019, CSB moved the trial court to place the children in the legal custody of the grandparents. It later withdrew that motion, however, because the grandfather ("Grandfather") had become very ill and the grandparents informed CSB that they could no longer care for the children. The children were placed in foster care and temporary custody was extended to enable CSB to pursue an alternative relative placement. Grandfather later passed away.

{¶6} On November 20, 2020, CSB moved for permanent custody of both children. It alleged that the children had been in its temporary custody for more than 12 months of a consecutive 22-month period and that permanent custody was in their best interest. As an alternative disposition to permanent custody, Mother requested that legal custody be granted to her or the maternal grandmother ("Grandmother"). Following a final dispositional hearing, the

trial court terminated parental rights and placed C.W. and B.M. in the permanent custody of CSB.

{¶7} Mother and Father separately appealed, and their appeals were later consolidated. Mother raises one assignment of error and Father raises two. Mother's assignment of error will be addressed along with Father's second assignment of error because they are closely related.

II.

**FATHER'S ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED THE PARTIES' PARENTAL RIGHTS AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} Father's first assignment of error challenges the weight of the evidence supporting the trial court's permanent custody decision. Because Father is the biological parent of only B.M., he confines his argument to that child and this Court will likewise limit its review of this assignment of error to that child.

{¶9} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing

evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶10} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶11} The trial court found that the first prong of the permanent custody test was satisfied because B.M. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. Father does not dispute that finding but instead challenges the trials court's finding that permanent custody was in the best interest of B.M.

{¶12} When determining the child's best interest, the trial court must consider all relevant factors, including: the interaction and interrelationships of the child, the child's wishes, the child's custodial history; the child's need for permanence and whether such a placement can be achieved without a grant of permanent custody.[1] R.C. 2151.414(D)(1)(a)-(d); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

---

[1] Although the trial court was also required to consider any relevant factors set forth in R.C. 2151.414(E)(7)-(11), none of those factors apply to this case. *See* R.C. 2151.414(D)(1)(e).

{¶13} During this case, the interaction between Father and B.M. was limited to supervised visitation because Father never complied with the mental health or substance abuse components of the case plan. Father did not submit to regular drug screening and, when he did, he tested positive for amphetamine and methamphetamine. Father did not regularly attend his scheduled visits with B.M., nor did he maintain contact with the caseworker.

{¶14} B.M. had expressed that he was uncertain about where he wanted to live. The guardian ad litem had supported legal custody to Father at one point during the case, but then Father began testing positive for drugs again. The guardian ad litem expressed concern that Mother and Father continued their off and on relationship with each other because each parent was a negative influence on the other. Because the parents continued to use drugs and otherwise lacked stability in their lives, the guardian ad litem recommended permanent custody to CSB.

{¶15} B.M.'s custodial history had included an extended period living in temporary placements. By the time of the hearing, B.M. had been in the temporary custody of CSB for more than two years. CSB had filed its complaint nearly two years and four months earlier, so the trial court could not extend temporary custody any longer. R.C. 2151.353(G). Neither parent was able to provide B.M. with a safe and stable home and CSB had been unable to find a suitable relative who was willing and able to do so. The trial court reasonably concluded that B.M. needed a legally secure permanent placement and that permanent custody was the best option to provide him with stability.

{¶16} Although Father argued at the hearing and again on appeal that Grandmother was willing and able to provide a suitable home for B.M., that argument was not supported by the evidence presented at the hearing. Several witnesses testified about Grandmother's inability to meet the daily needs of B.M. or provide him with a stable home. While B.M. had lived with the

maternal grandparents, Grandfather had been the primary caretaker until he became ill. At the time of the hearing, Grandmother was 74 years old and suffered from dementia. Her physical health was also declining, and she suffered recurring, uncontrolled seizures. Moreover, Mother, who continued to test positive for amphetamine and methamphetamine, lived with Grandmother and would continue to live in her home in the future.

{¶17} Given the undisputed evidence before the trial court, Father has failed to demonstrate that the trial court lost its way in concluding that permanent custody was in the best interest of B.M. Father's first assignment of error is overruled.

### FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AND TERMINATED FATHER'S PARENTAL RIGHTS WHEN THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

### MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AND PLACED THE CHILDREN IN THE PERMANENT CUSTODY OF CSB WHEN THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

{¶18} Mother and Father argue that the juvenile court erred by awarding permanent custody of the children to CSB because the agency failed to make reasonable reunification efforts. This Court disagrees.

{¶19} R.C. 2151.419(A)(1) requires the juvenile court to determine whether the agency has used reasonable reunification efforts at any hearing at which the court removes a child from his home or continues the child's removal from his home. It is well settled that "the statute imposes no requirement for such a determination at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that

hearing." (Internal quotations omitted.) *In re L.R.*, 9th Dist. Summit Nos. 29266 and 29271, 2019-Ohio-2305, ¶ 14, quoting *In re A.C.-B.*, 9th Dist. Summit Nos. 28330 and 28349, 2017-Ohio-374, ¶ 22; *see also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43 (concluding that a reasonable efforts determination is necessary at a permanent custody hearing only if the agency has not demonstrated its use of reasonable efforts prior to that time).

{¶20} In this case, the juvenile court consistently found that CSB had used reasonable efforts to prevent the children's removal from their home. Beginning with the shelter care hearing and continuing with adjudication, the initial disposition, and multiple review hearings, the trial court made the requisite statutory reasonable efforts determinations. At no time did Mother or Father challenge those findings.

{¶21} As the parents failed to object or move to set aside any reasonable efforts determinations by the juvenile court, they have forfeited any challenge to the agency's use of reasonable efforts on appeal except for a claim of plain error. *See In re L.R.* at ¶ 18. To demonstrate plain error, they must show not only trial court error, but also resulting prejudice. *In re T.G.*, 9th Dist. Summit No. 29658, 2020-Ohio-4802, ¶ 22. As they have not provided any transcripts of the prior hearings after which the juvenile court consistently found CSB's use of reasonable efforts, this Court must presume regularity as to those reasonable efforts determinations. *See In re L.R.* at ¶ 18. Accordingly, Mother and Father have failed to demonstrate error by the juvenile court necessary to substantiate plain error.

{¶22} Notwithstanding the above, Mother argues that CSB could not have used reasonable reunification efforts based on the agency's alleged non-compliance with federal law. She presents a form-over-substance argument which cannot prevail. She cites federal provisions which she admits only implicate federal funding for state child welfare agencies. *See, e.g.*, 42

U.S.C. 622, 670, and 671. No federal provisions cited by Mother provide for the negation of any lawful order by a state court.

{¶23} Moreover, to the extent that the parents challenge the contents of the case plans under state law, the juvenile court derives its sole authority in dependency, neglect, and abuse cases from the comprehensive statutory scheme set out in R.C. Chapter 2151. *E.g., In re A.P.*, 9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873, ¶ 16. R.C. 2151.412 addresses case plans and further directs the director of job and family services to adopt rules regarding the content, format, development, implementation, and modification of case plans. Those rules are found in various provisions of the Ohio Administrative Code.

{¶24} In this case, CSB filed an original and several amended case plans with objectives for both parents in pursuit of reunification with the children. The parents did not object to any case plan. Although they now argue that alleged deficiencies in the case plan require reversal, they have neither argued nor demonstrated how they were prejudiced by any alleged deficiency. For example, they argue that the maternal grandmother should have been included in the case plan. They cite no authority, however, to support their underlying premise that a non-parent who has never had legal custody of the children has any right to be included in the case plan. *See In re R.B.-B.*, 9th Dist. Summit Nos. 29817 and 29832, 2021-Ohio-818, ¶ 18.

{¶25} Because the parents have failed to demonstrate reversible error, Mother's sole assignment of error and Father's second assignment of error are overruled.

III.

{¶26} Father's and Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

AMBER R. CROWE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

LEONARD BREIDING, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.