[Cite as *In re S.M.*, 2022-Ohio-1083.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: S.M.

C.A. No.    30084


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 19 04 0303

DECISION AND JOURNAL ENTRY

Dated: March 31, 2022

---

CALLAHAN, Judge.

{¶1}    Appellant, M.M. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in a planned permanent living arrangement.  This Court affirms.

I.

{¶2}    Mother is the biological mother of S.M., born January 28, 2005.  The child's father did not appeal from the trial court's judgment.

{¶3}    On April 8, 2019, Summit County Children Services Board ("CSB") filed a complaint to allege that S.M. was an abused, neglected, and dependent child because S.M. had been sexually abused by Mother's former paramour and Mother was not otherwise meeting the child's needs.  Mother later agreed to the adjudication of S.M. as an abused, neglected, and dependent child.

{¶4} In addition to S.M. suffering sexual abuse while in Mother's home, the facts were not disputed that Mother had not been meeting S.M.'s extensive medical and developmental needs. S.M. was diagnosed with developmental delays many years earlier but was not then receiving any services to address those needs. At the time this case began, S.M. had missed almost one year of school.

{¶5} Among her numerous medical problems, S.M. was not able to have regular bowel movements because damage to her nerves had resulted in fecal incontinence. S.M. had a surgical procedure, known as a Malone Procedure, which connected her appendix to a catheter tube extruding through her naval ("Malone tube"). Her bowels could be emptied through the tube, but S.M.'s caregiver was required to flush the tube daily to prevent fecal impaction. S.M. had been seeing specialists at Nationwide Children's Hospital in Columbus, who had expressed concern that S.M.'s tube was not being flushed as required, so she continued to suffer from severe fecal impaction.

{¶6} The juvenile court initially permitted S.M. to remain in Mother's custody under an order of protective supervision. S.M. was later placed in the temporary custody of CSB, however, because Mother still was not meeting the child's extensive medical, emotional, and developmental needs. Although Mother admitted that she was failing to flush S.M.'s Malone tube every day, medical experts opined that Mother rarely flushed the tube, which had resulted in S.M. requiring frequent hospitalizations.

{¶7} Eight months after the case plan was adopted, Mother complied with the requirement that she obtain a parenting assessment. Mother was diagnosed with a personality disorder with dependent, histrionic, and antisocial traits. She was also diagnosed with an unspecified trauma disorder. With psychiatric medication and through counseling, Mother worked

on better controlling her behavior and on accepting responsibility for S.M. being in agency custody.

**{¶8}** While placed in CSB temporary custody, S.M. resided with a foster family who was meeting all her medical, emotional, and educational needs and her medical condition had improved significantly. Since moving in with the foster family, S.M. had not required hospitalization and her medical specialists had opined that S.M. might eventually be able to have bowel movements without the use of the Malone tube.

**{¶9}** S.M. was engaged in counseling, was regularly attending school, and her overall emotional health had greatly improved. She was happy and wanted to remain in the foster home. S.M. also expressed that she wanted to maintain a relationship with Mother, but she did not believe that Mother was able to properly care for her.

**{¶10}** On March 9, 2021, CSB moved the trial court to place S.M. in a planned permanent living arrangement ("PPLA"). CSB alleged that Mother and S.M. maintained a strong bond, but it did not believe that Mother was able to provide S.M. with a safe and stable home and it had found no suitable relative who was able to take legal custody. Consequently, the agency explained in its motion that it sought a PPLA placement rather than reunification with Mother, legal custody to another, or permanent custody. The motion further alleged that S.M. was 16 years old and that this case satisfied the other explicit requirements for a PPLA placement under R.C. 2151.415(C)(1). Mother alternatively moved for legal custody of S.M.

**{¶11}** The case proceeded to a final dispositional hearing on the parties' alternative motions. During the hearing, which was conducted via a Zoom videoconference, the magistrate heard testimony about Mother's inability to meet S.M.'s significant medical, emotional, and educational needs. CSB also presented evidence that Mother sometimes interacted inappropriately

with S.M. and demonstrated a disregard for the negative effects that her behavior had on the child. For example, despite CSB telling her repeatedly not to talk to S.M. about the sexual assaults by Mother's former paramour because the topic was traumatic for S.M., Mother continued to talk to S.M. about the man's upcoming criminal trial. The foster mother took S.M. to a hotel and stopped answering her phone because Mother continued to call S.M. the night before the child testified at the criminal trial.

{¶12} Mother had only one unsupervised visit with S.M. during this case, for the child's sixteenth birthday. S.M. had requested that Mother take her to a trampoline park and to Dairy Queen for a Blizzard Treat. Instead, and against S.M.'s wishes, Mother took S.M. to have her ears pierced. S.M. was so upset after the visit that she asked the foster mother to remove the earrings and cancel S.M.'s next scheduled visit with Mother. Mother's visits with S.M. were supervised from that day forward. The guardian ad litem recommended that Mother's visits with S.M. be supervised for the foreseeable future because of Mother's unpredictable behavior and lack of understanding that she needed to put S.M.'s wishes and needs ahead of her own.

{¶13} During the hearing, Mother demonstrated that, after over a year of counseling and psychiatric treatment, she still was not able to control her impulsive behavior. Despite reprimands by the magistrate, Mother interrupted the testimony of several of CSB's witnesses to voice her disagreement with their testimony. The magistrate repeatedly admonished her and muted her microphone, but Mother continued to interrupt the testimony of CSB's witnesses.

{¶14} Mother's own testimony further demonstrated that she had not gained insight into the significance of her poor parenting decisions and how they had seriously affected the wellbeing of her child. Mother explained that she was working with her counselor on accepting responsibility for the poor parenting decisions she had made while S.M. was in her custody. Mother repeatedly

used the word "mistakes" to refer to her irresponsible parenting decisions, however, implying that her parenting deficiencies were nothing more than occasional lapses in judgment. Her "mistakes" had included exposing S.M. to a man who stayed in the home and sexually abused the child for years; failing to adequately meet S.M.'s serious medical and emotional needs; and failing to send her developmentally delayed child to school for nearly one year. Moreover, Mother continued to attribute partial blame to S.M. for Mother's own failures to regularly flush the Malone tube and send S.M. to school.

{¶15} Following the hearing, the magistrate decided that S.M. should be placed in a PPLA. Mother filed objections, which were overruled by the trial court. The trial court entered judgment placing S.M. in a PPLA. Mother appeals and raises three assignments of error. This Court will address her first and third assignments of error together because they both challenge the trial court's determination that placement in a PPLA was in S.M.'s best interest.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT GRANTED A [PPLA] OF MOTHER'S MINOR CHILD AS [CSB] FAILED TO DEMONSTRATE WITH CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILD.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR BY GRANTING THE MOTION FOR A [PPLA] AND NOT GRANTING LEGAL CUSTODY TO MOTHER.

{¶16} Mother's first assignment of error is that the trial court's PPLA decision was not supported by clear and convincing evidence. Although she argues in her third assignment of error that this Court must review the trial court's final dispositional decision de novo, she cites no legal authority to support that standard of review. Through these assignments of error, Mother asserts

that the evidence presented at the hearing did not support the trial court's PPLA decision. Therefore, this Court will address these assigned errors together to determine whether the trial court's judgment was against the manifest weight of the evidence.

{¶17} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶18} Through these two assignments of error, and her objections to the magistrate's decision, Mother challenges only the trial court's finding that a PPLA placement, rather than legal custody to Mother, was in the best interest of S.M. Had the final dispositional hearing involved two competing motions for legal custody of the child, the trial court's determination would have focused only on the best interest of S.M. *See In re K.H*., 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12.

{¶19} In this case, however, the trial court was faced with sharply different dispositional alternatives for S.M.: PPLA or legal custody to Mother. Before the trial court had authority to consider whether PPLA was in the best interest of S.M., CSB was required to demonstrate several other statutory requirements for such a placement.

{¶20} Pursuant to R.C. 2151.415(C)(1), to support its motion for PPLA, CSB was required to prove "why a planned permanent living arrangement is appropriate for the child, including, but not limited to, evidence that the agency has tried or considered all other possible

dispositions for the child." A trial court lacks authority to place a child in a PPLA "unless it finds, by clear and convincing evidence," not only that a PPLA is in the best interest of the child, that the child is sixteen years of age or older, but also that one of the circumstances enumerated in R.C. 2151.415(C)(1)(a)-(c) exists. In this case, the trial court found that S.M. qualified for a PPLA because of the circumstance set forth in R.C. 2151.415(C)(1)(b), which provides:

> The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child * * *, and the child retains a significant and positive relationship with a parent or relative[.]

{¶21} Notably, Mother has not challenged the trial court's finding under R.C. 2151.415(C)(1)(b) that clear and convincing evidence demonstrated that she has significant mental or emotional problems and that she is unable to care for S.M. because of those problems. Any custodial determination about the best interest of a child inherently requires the trial court to consider whether a proposed custodian can provide the child with appropriate care. By failing to dispute the trial court's finding that she is unable to care for S.M., Mother has implicitly conceded that it is not in S.M.'s best interest to be placed in her legal custody.

{¶22} Rather than disputing any of the trial court's other findings on the statutory requirements for a PPLA placement, Mother focuses her argument solely on evidence that S.M. and Mother love each other and want to maintain a relationship. The trial court and CSB did not dispute that there is a loving bond between Mother and S.M. and that both want to preserve their parent-child relationship. The fact that S.M. "retains a significant and positive relationship with a parent" is one of the explicit requirements for a PPLA placement under R.C. 2151.415(C)(1)(b), quoted above. This PPLA decision also required the trial court to find clear and convincing evidence that S.M. was at least sixteen years old and that adoption (terminating parental rights) was not in her best interest. *Id*.

{¶23} Because Mother has failed to dispute most of the statutory requirements for this PPLA placement that the trial court found were satisfied by clear and convincing evidence, she has failed to demonstrate that the evidence failed to support the trial court's judgment. Consequently, her first and third assignments of error are overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED A [PPLA] WHEN THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

{¶24} Mother's second assignment of error is that the trial court erred by placing S.M. in a PPLA placement because CSB failed to make reasonable efforts to reunify S.M. with Mother. Mother's argument through her objections in the trial court and again on appeal merely asserts that CSB did not make reasonable reunification efforts.

{¶25} The evidence at the hearing demonstrated that CSB assisted mother in engaging in a parenting evaluation, intensive outpatient treatment, and ongoing weekly counseling. Mother's counselor believed that Mother had made some progress in counseling but opined that she needed to continue with her ongoing counseling sessions. Although Mother now suggests that the agency should have added more services to the case plan, she does not specify now, nor did she in the trial court, what reunification services CSB should have provided but did not.

{¶26} Mother was represented by counsel throughout the trial court proceedings and had the opportunity to raise objections to the trial court's reasonable efforts findings that were made after several prior hearings in this case, but she did not. *See In re C.W.*, 9th Dist. Summit Nos. 29974 and 29978, 2021-Ohio-4156, ¶ 21. Moreover, if Mother believed that additional services should have been added to the case plan, she could have proposed an amendment to the case plan or raised an objection to the amended case plan filed by CSB, but she did not. *See* R.C.

2151.412(F)(2). By failing to timely raise any alleged deficiency in the case plan, Mother has forfeited that issue on appeal. *In re K.C.*, 9th Dist. Summit Nos. 30057 and 30058, 2022-Ohio-113, ¶ 13.

{¶27} Mother has not argued plain error, has not identified any deficiency in the agency's reunification efforts, nor has she explained how any shortcoming in CSB's reunification efforts prejudiced her case. Mother's second assignment of error is overruled.

III.

{¶28} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

JAMES E. BRIGHTBILL, Attorney at Law, for Appellee.

ANNETTE POWERS, Guardian ad Litem.