**[Cite as *In re K.M.*, 2022-Ohio-916.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.M.
    K.M.
    K.M.

C.A. Nos.     30117
              30118
              30119

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 18 08 0781
             DN 18 08 0782
             DN 18 12 1248

DECISION AND JOURNAL ENTRY

Dated: March 23, 2022

---

CARR, Presiding Judge.

**{¶1}** Appellant, K.M. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his three minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Father is the biological father of the three children at issue in this appeal: K.M., born October 29, 2012; and twin children also with the initials K.M., born July 19, 2018. The trial court proceedings also involved another child, but that child has another father and is not a party to this appeal. The children's mother ("Mother") voluntarily relinquished her parental rights and has not appealed the permanent custody judgment.

{¶3}     This case began when the twins were newborns living with Mother.  The older K.M. was then residing with Father, pursuant to a 2014 court order.  There is nothing in the record about prior agency involvement with the older K.M.  The 2014 custody order was apparently entered in a case filed by Father, who was never married to Mother, to establish his parentage and allocate parental rights and responsibilities.

{¶4}     On August 15, 2018, the twins were removed from Mother's custody because Mother was not complying with a voluntary safety plan CSB created because of Mother's ongoing problems with substance abuse and domestic violence.  The twins were later adjudicated dependent and placed in the temporary custody of CSB.

{¶5}     The older K.M. was removed from Father's custody during December 2018 because CSB learned that Father also had substance abuse problems and had been charged with domestic violence and robbery for an alleged offense against the paternal grandfather in a nursing home.  The older K.M. was later adjudicated dependent and placed in the temporary custody of CSB.

{¶6}     In his criminal case, Father entered a guilty plea to the lesser offense of attempted robbery.  Father was convicted of attempted robbery and sentenced to a two-year period of community control.  His community control sanctions included, among other things, his successful completion of the Community Based Correctional Facility ("CBCF") program at Oriana House.  Although Father twice tested positive for drugs while in the CBCF program, he successfully completed the program and was discharged.  His treatment counselor in the CBCF program recommended that Father continue with aftercare treatment for his ongoing drug problem, but Father did not.  Father also refused to submit to drug testing by CSB.

{¶7} Because neither parent cooperated with CSB to work on the reunification goals of the case plan, CSB initially moved for permanent custody of the children during July 2019. The agency later withdrew the permanent custody motion, however, because a paternal aunt ("Aunt"), who lived in California, had expressed interest in taking legal custody of the children. Because a placement with Aunt required that she be investigated through the Interstate Compact on the Placement for Children, CSB moved to extend temporary custody while Aunt was investigated for placement.

{¶8} Aunt was approved for placement and the children began living with her on December 24, 2019. The children were placed in her temporary custody under an order of protective supervision. CSB later requested, and was granted, a second six-month extension of temporary custody and protective supervision to allow CSB to pursue a permanent placement with Aunt.

{¶9} During July 2020, CSB moved to place the children in the legal custody of Aunt, but it withdrew that motion several months later when the agency learned about allegations that Aunt had abused other children in her home. The three K.M. children were removed from Aunt's custody and placed in the temporary custody of CSB. On November 30, 2020, CSB moved for permanent custody of the three children.

{¶10} The case proceeded to a final dispositional hearing on CSB's motion for permanent custody and on alternative motions for legal custody to Father or Aunt. Following a hearing, the trial court terminated parental rights and placed K.M., K.M., and K.M. in the permanent custody of CSB.

{¶11} Father appeals and raises five assignments of error. This Court will address his first two assignments of error together because they both challenge the evidence supporting the trial court's permanent custody judgment.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT IT IS IN THE CHILDREN'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF [CSB].

{¶12} Father's first and second assignments of error are that the trial court's permanent custody decision was against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal

quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶14} The trial court found that the first prong of the permanent custody test was satisfied because Father had failed "continuously and repeatedly to substantially remedy" the conditions that brought his children into agency custody and prevented them from returning to the custody of either parent. R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(1). Father does not challenge that finding.

{¶15} Moreover, the evidence was not disputed that, when CSB moved for permanent custody more than two years after this case began, Father continued to lack stable housing or income and was not participating in counseling or drug screening. By the time of the final dispositional hearing several months later, Father was scheduled for a hearing in his criminal case for violating the conditions of his community control. Father violated several conditions of his community control, including failing to submit to drug testing as required and testing positive for drugs on 10 occasions. Father's probation officer testified that he would recommend that Father complete inpatient substance abuse treatment at Oriana House, but Father admitted during his testimony that he was potentially facing incarceration for a period of up to 15 months.

{¶16} Father challenges the trial court's finding that it was in the best interest of his children to be placed in the permanent custody of CSB rather than in his legal custody. If permanent custody was in the children's best interest, however, legal custody to another adult necessarily was not. *In re D.T.*, 9th Dist. Summit No. 29876, 2021-Ohio-1650, ¶ 15. When determining the children's best interest, the trial court must consider all relevant factors, including: the interaction and interrelationships of the children, the wishes of the children, their custodial history, and their need for permanence in their lives and whether such a placement can be achieved without a grant of permanent custody.[1] R.C. 2151.414(D)(1)(a)-(d); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶17} Father was incarcerated during part of this case. Throughout the remainder of the case, his interaction with the children was limited to weekly in-person or remote visitation. His visits were always supervised or monitored because he had not complied with the requirements of the case plan. Although one witness observed that Father's interaction with the children was usually good, other witnesses testified that Father's visits were not positive. For example, the trial court heard testimony that Father did not interact much with the children; repeatedly threatened that he would not visit them again when they misbehaved; and tended to escalate their tantrums or other misbehavior rather than attempt to calm them or redirect their behavior. Moreover, Father did not consistently attend his scheduled visits with the children.

---

[1] Although the trial court is also required to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply, none of those factors are relevant in this case.

{¶18}   Because the children were not mature enough to express their own wishes about where to live, the guardian ad litem spoke on their behalf.  He opined that permanent custody was in their best interest because Father lacked stable income and housing and was potentially facing 15 months of incarceration after his probation violation hearing scheduled for a few weeks later.

{¶19}   The children's custodial history further supported an award of permanent custody to CSB.  The older K.M. had lived in Father's custody for approximately four years before this case began.  The twins had never been in the custody of Father.  By the time of the hearing, the children had been placed out of their parents' custody for well over two years.  During that time, the twins had lived in five different placements and the older K.M. had lived in three different homes.  All three children needed a legally secure permanent placement.

{¶20}   Neither parent was able to provide the children with a stable home and CSB had been unable to find any suitable relatives who were willing to take legal custody of the children.  Consequently, the evidence supported the trial court's conclusion that a legally secure permanent placement would be achieved by placing the children in the permanent custody of CSB.

{¶21}   Father has failed to demonstrate that the trial court's permanent custody decision was against the manifest weight of the evidence.  His first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE COURT ABUSED ITS DISCRETION IN ALLOWING THE TESTIMONY OF WITNESSES WHO WERE NOT PROPERLY DISCLOSED OVER OBJECTIONS.

{¶22}   Father's third assignment of error is that the trial court erred in allowing Aunt to call certain witnesses to testify because she did not comply with the trial court's order that all parties file their witness lists at least seven days before the hearing.  The record reveals that Aunt

filed an unsigned witness list less than seven days before the hearing and, for that reason, both Father and CSB objected to her witnesses testifying at the permanent custody hearing.

{¶23} A trial court has broad discretion in the admission of evidence. *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). This Court should not reverse its decision to admit evidence unless the trial court clearly abused its discretion, and the party challenging the admission was materially prejudiced by the evidence. *Id.* Father asserts that the trial court abused its discretion by allowing Aunt's witnesses to testify. He relies on Juv.R. 24(C), which provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a person has failed to comply with [a discovery order] the court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.

{¶24} The purpose of the discovery rules is to "prevent surprise and the secreting of evidence favorable to one party" in order to "produce a fair trial." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987). When deciding whether to impose a sanction for a discovery violation, the trial court must "inquire into the circumstances surrounding" the violation and impose the "least severe sanction that is consistent with the purpose of the rules of discovery." *Id.* at paragraph two of the syllabus. In this case, Aunt was representing herself pro se from California and explained at the hearing that she had tried to comply with the court's rules and orders as best she understood.

{¶25} Father's argument against the admissibility of Aunt's evidence is based on his lack of notice that these witnesses would testify and the potential prejudice that their testimony had on his case. Father cites to this Court's decision in *In re N.K.*, 9th Dist. Summit No. 29074, 2019-Ohio-371, ¶ 23, however, in which we rejected a similar argument because the appellant did not request a continuance of the hearing or a recess to enable his counsel to familiarize himself with recently disclosed evidence to prepare to defend against it. Although Juv.R. 24(C) explicitly gave

the trial court discretion to continue the hearing, Father did not request a continuance of the hearing, "which could have avoided any prejudice that might have resulted from a lack of prior notice about the[se] witness[es]." *In re L.P.*, 9th Dist. Summit No. 27792, 2015-Ohio-4164, ¶ 25, citing *State v. Riddle*, 3d Dist. Defiance No. 4-02-18, 2003-Ohio-478, ¶ 17. Moreover, Father fails to point to any specific evidence that was admitted through the testimony of Aunt's witnesses to demonstrate how it had any prejudicial impact on his case.

{¶26} Consequently, Father has failed to demonstrate that the trial court abused its discretion by allowing Aunt's witnesses to testify. Father's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION BY INCLUDING DETRIMENTAL AND PREJUDICIAL INFORMATION REGARDING FATHER IN ITS JOURNAL ENTRY OUTSIDE THE SCOPE OF THE PROCEEDINGS.

{¶27} Father's fourth assignment of error challenges the trial court's consideration of a letter written by Aunt that was attached to a "notice" filed by CSB in May 2020 that Aunt and Father were having problems communicating and conducting Father's remote visitations with the children. Aunt's letter set forth many allegations about how Father had interacted inappropriately with her and/or the children while the children resided in her home.

{¶28} Although CSB asserts that Father waived or forfeited any objection to the letter on appeal, this Court disagrees. Shortly after Aunt's letter was filed with the trial court, Father's counsel moved to strike the letter and requested an evidentiary hearing on the issue. An evidentiary review hearing was held before a magistrate, during which the parties testified under oath about these allegations. The magistrate considered the dispute between Father and Aunt based on their sworn testimony. Its resulting order explicitly stated that Father's motion to strike Aunt's letter

from the record remained pending. The trial court apparently never ruled on Father's motion to strike, however.

{¶29} Even though Father has not forfeited this issue on appeal, he has failed to demonstrate any prejudicial error from the trial court's reference to Aunt's letter. Although the trial court summarized some of the allegations in Aunt's 2020 letter in its final judgment entry, there is nothing to suggest that the court relied on the truth of Aunt's allegations or that it held those allegations against Father. In fact, the trial court referred to the allegations in Aunt's letter after it explicitly found that Aunt's testimony about the best interest of the children lacked credibility. The trial court explained that Aunt's position toward the suitability of Father had "wavered" throughout the three-day hearing, with Aunt's testimony ranging from extreme criticism of Father to ultimate support of his legal custody motion on the last day of the hearing. Within the context of its 17-page judgment entry, the trial court referred to the allegations in Aunt's letter from one year earlier to support its conclusion that it would assign little or no weight to Aunt's opinion because her position toward Father had fluctuated throughout this case.

{¶30} Given the context within which the trial court referenced Aunt's letter and the court's explicit finding that Aunt lacked credibility, there is nothing in the trial court's judgment to suggest that the court accepted Aunt's unsworn allegations as true or held them against Father in any way. Therefore, Father has failed to demonstrate that the trial court's reference to Aunt's letter prejudiced his case. His fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE [TRIAL] COURT ABUSED ITS DISCRETION BY ADMITTING EXHIBIT 1 INTO EVIDENCE OVER OBJECTION.

{¶31} Father's final assignment of error is that the trial court abused its discretion by admitting CSB's Exhibit 1 into evidence. CSB introduced its Exhibit 1, Father's counseling

records from Coleman Professional Services, and his counselor from Coleman attempted to authenticate the exhibit while she testified. Father objected to the admission of Exhibit 1 multiple times and, each time, Father's counselor gave additional testimony, to explain that the records were accurate.

{¶32} Father argues that CSB did not properly authenticate Exhibit 1 as his complete and accurate counseling records because his counselor identified the exhibit via Zoom videoconference. Father does not assert that the records were not authentic or that they reflected any false or nonrelevant information, but only that their admission did not technically comply with the rules of evidence. Moreover, he has failed to point to any prejudicial evidence in the records that had not already been admitted, without any objection, through the testimony of his counselor at Coleman. Therefore, "even if Father can demonstrate any technical error in establishing that these records were authentic or complete, he has failed to argue or demonstrate that there was any resulting prejudice to his defense." *In re F.B.*, 9th Dist. Summit Nos. 28960 and 28985, 2019-Ohio-1738, ¶ 44. Father's fifth assignment of error is overruled.

### III.

{¶33} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

DANIEL R. BACHE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

PAMELA ANN HAWKINS, Attorney at Law, for Appellee.

NEIL P. AGARWAL, Guardian ad Litem.