[Cite as *In re K.C.*, 2022-Ohio-2851.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.C.

C.A. Nos.    30234
                30237

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 19-8-688

DECISION AND JOURNAL ENTRY

Dated: August 17, 2022

SUTTON, Judge.

**{¶1}** Appellants, B.C. ("Mother") and A.P. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of K.C., born July 1, 2018. Mother and Father have been living together as a couple and got married during these proceedings.

**{¶3}** When this case began, Mother and Father resided in Tennessee but had traveled to Ohio with K.C. to visit relatives. Their vehicle broke down in this area and they could not afford to repair it, so they were unable to return to their home in Tennessee. Because their relatives were not willing for them to stay in their home any longer, Mother, Father, and K.C. temporarily stayed in an uninhabited, condemned house. Father apparently had planned to do repair work on the

house to earn money to pay for the vehicle repairs. While staying there, Mother called 911 because Father had a medical emergency, and authorities discovered them living in the home with their one-year-old child.

{¶4} On August 19, 2019, CSB filed a complaint, alleging that K.C. was a neglected and dependent child because the family was living in a condemned home that had no food, refrigerator, or running water. The home also included many safety risks for a young child, including exposed wiring. The family had no other place to stay, so K.C. was taken into custody.

{¶5} On September 19, 2019, K.C. was adjudicated a dependent child and the allegations of neglect were dismissed. The trial court later placed K.C. in the temporary custody of CSB and adopted the case plan that the agency had filed. The initial case plan required Mother to obtain a mental health assessment and follow all recommendations; obtain and maintain stable income and housing; and demonstrate that she could meet the other basic needs of the child. After Father established paternity of K.C., similar goals for Father were added to the case plan.

{¶6} CSB initially moved for permanent custody of K.C. on July 20, 2020, and each parent alternatively moved for legal custody. Following an evidentiary hearing, all three dispositional motions were denied and K.C. was continued in the temporary custody of CSB. The trial court noted that, although the parents had made some progress on the reunification goals of the case plan, neither was in a position at that time to provide K.C. with a safe and stable home.

{¶7} On January 29, 2021, CSB filed an amended case plan. Among other things, the amended case plan required both parents to obtain new mental health assessments and follow all recommendations. Neither parent filed objections to that case plan or any of the other case plans filed in this case. The trial court also explicitly adopted the original and amended case plans as orders of the court. Father failed to obtain a mental health assessment and never demonstrated to

CSB that he had obtained suitable employment or housing. Mother relied on Father to demonstrate stable housing and income. She inconsistently complied with the mental health component of the case plans but was eventually terminated from services because of her noncompliance.

{¶8} On February 24, 2021, CSB again moved for permanent custody. Each parent alternatively moved for legal custody of K.C. Following an evidentiary hearing, the trial court terminated parental rights and placed K.C. in the permanent custody of CSB. Mother and Father separately appealed and their appeals were later consolidated. They each raise two assignments of error, which will be addressed together because they are closely related.

II.

## MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT PLACED THE CHILD IN THE PERMANENT CUSTODY OF [CSB] WHEN [CSB] DID NOT PROVIDE MOTHER WITH REASONABLE REUNIFICATION EFFORTS, AND IN FACT PROVIDED EFFORTS THAT DAMAGED THE INTENDED REUNIFICATION.

## FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] WITH A FINDING THAT [CSB] PROVIDED REASONABLE REUNIFICATION EFFORTS PURSUANT TO R.C. 2151.419.

{¶9} These assignments of error will be addressed together because they assert that the trial court erred in terminating their parental rights because CSB did not make reasonable efforts to reunify them with their child. R.C. 2151.419(A)(1) required the trial court to make reasonable efforts findings at any hearing specified in the statute at which the court removed the child from the home or continued the child's removal from the home. Notably, "the statute imposes no requirement for such a determination at the time of the permanent custody hearing

unless the agency has not established that reasonable efforts have been made prior to that hearing." (Internal quotations omitted.) *In re L.R.*, 9th Dist. Summit Nos. 29266 and 29271, 2019-Ohio-2305, ¶ 14, quoting *In re A.C.-B.*, 9th Dist. Summit Nos. 28330 and 28349, 2017-Ohio-374, ¶ 22; *see also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43 (concluding that a reasonable efforts determination is necessary at a permanent custody hearing only if the agency has not demonstrated its use of reasonable efforts prior to that time).

{¶10} In this case, the trial court made reasonable efforts findings after each of the requisite hearings. Beginning with the shelter care hearing and continuing through multiple review hearings, the trial court consistently found that CSB had made reasonable efforts to prevent the continued removal of K.C. from his parents' home. Neither parent challenged any of those findings in the trial court.

{¶11} As the parents failed to object or move to set aside any reasonable efforts determinations made by the trial court, they have forfeited any challenge to the agency's use of reasonable efforts on appeal except for a claim of plain error. *See In re L.R.* at ¶ 18. To demonstrate plain error, they must show not only trial court error, but also resulting prejudice. *In re T.G.*, 9th Dist. Summit No. 29658, 2020-Ohio-4802, ¶ 22. As they have not provided any transcripts of the prior hearings after which the trial court found that CSB had made reasonable reunification efforts, this Court must presume regularity as to those determinations. *See In re L.R.* at ¶ 18. Accordingly, Mother and Father have failed to demonstrate plain error by the trial court.

{¶12} Both parents specifically challenge some of the requirements of the amended case plan filed January 29, 2021, but they could have challenged that case plan in the trial court by filing timely objections. R.C. 2151.412(F)(2). Neither parent objected to the amended case plan, and it was later explicitly adopted by the trial court as a court order. *See id.* Moreover, although

they assert that they were not afforded enough time to work on the requirements of the amended case plan, the permanent custody hearing was not held until nearly one year after that case plan was filed. By that time, Father had made no effort to comply with the requirements of that case plan or a prior case plan, and Mother had been terminated from case plan services due to her noncompliance. The evidence at the hearing demonstrated that the lack of case plan compliance by the parents was due to their own unwillingness to participate in services, not because of any lack of reunification efforts by CSB.

{¶13} The parents have failed to demonstrate that CSB failed to provide them with reasonable reunification efforts in this case. Mother's first and Father's second assignments of error are overruled.

## MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AND GRANTED [CSB'S] MOTION FOR PERMANENT CUSTODY BECAUSE THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB] AND DENIED FATHER'S MOTION FOR LEGAL CUSTODY AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} Next, both parents challenge the evidence supporting the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child

or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶15} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶16} In this case, the trial court found that the first prong of the permanent custody test was satisfied because K.C. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. The parents do not dispute that finding, but challenge only the trial court's best interest finding. Although Father's assignment of error states that the trial court erred in denying his alternative request for legal custody of K.C., he does not make that argument to support a grant of legal custody. Moreover, if permanent custody was in the best interest of the

child, legal custody to another person necessarily was not. *In re K.M.*, 9th Dist. Summit Nos. 30117, 30118, and 30119, 2022-Ohio-916, ¶ 16.

{¶17} The parents assert that the trial court was required to consider their case plan compliance in its determination of the child's best interest. This Court has repeatedly held that, although case plan compliance may be relevant to the best interest of the child, it is not dispositive. *See In re J.W.*, 9th Dist. Summit No. 28976, 2019-Ohio-210, ¶ 15. Moreover, the evidence in this case demonstrated that Father had failed to comply with the requirements of the case plan because he did not believe that he needed services. Father refused to obtain a mental health assessment, as required by two of the amended case plans. Father testified that he had obtained stable income and housing, but he did not comply with the case plan requirement that he provide CSB with verification of his income or housing. Father and another witness testified that Father had made significant improvements to the home in which he and Mother were living, but he had not allowed CSB to see the home improvements. Moreover, although Father testified that he was making improvements to the house in lieu of paying rent, his landlord disputed that testimony. The landlord testified that the arrangement for Father to make improvements instead of paying rent applied only to the first few months, and Father did not finish the work. The landlord testified that, by the time of the hearing, Father owed him rent for several months, so he had hired an attorney to pursue eviction proceedings.

{¶18} Because Mother lived with Father and relied on his income, she also had failed to verify stable income and housing to CSB. Mother obtained two mental health assessments but did not consistently follow through with the recommended intensive parenting classes. At the hearing and again on appeal, Mother points to the report from her first mental health evaluation, which

merely noted that she may benefit from counseling. Mother was later required to obtain a second assessment, which recommended that she engage in intensive parenting classes.

{¶19} Mother participated inconsistently in parenting classes. The plan was for Mother to receive parenting instruction during visits with K.C. and separately with the instructor without the child present. Mother attended only a few instructional sessions outside of visits, however. Father would not allow the sessions to take place at their home. Mother was also reluctant to take redirection from the instructor. Mother was eventually terminated from the program for noncompliance.

{¶20} As emphasized already, the parents' lack of case plan compliance, although relevant, was not determinative of the trial court's best interest determination. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶21} The parents' interaction with K.C. while this case was pending for more than two years was limited to supervised visitation because neither parent had complied with the mental health component of the case plan. Father denied a need for mental health services, but he continued to exhibit angry and threatening behavior to agency employees. Moreover, at the time of the hearing, he had two outstanding warrants for criminal charges.

{¶22} Mother attended more visits than Father but both parents missed many visits and, when they did attend, they almost always arrived late. CSB's policy is to cancel a visit if a parent

is more than 15 minutes late but, because the foster family was bringing K.C. from their home in another county, the child sometimes waited up to 30 minutes for Father or Mother to arrive. Their chronic tardiness particularly concerned the caseworker because the parents lived only two blocks away from the agency visitation center.

{¶23} During the visits, Father interacted with K.C. more than Mother. Several witnesses expressed concern that Mother showed little affection to K.C. but tended to just sit and watch him interact with Father. When Father did not attend the visits, Mother interacted with K.C. with prompting from the supervisor but she was reluctant to hold or cuddle the young child. The guardian ad litem testified that she did not believe there was a bond between Mother and K.C.

{¶24} Because K.C. was only three years old at the time of the hearing, the guardian ad litem spoke on the child's behalf. She opined that permanent custody was in the best interest of K.C. because the parents had failed to demonstrate stable income or housing and had not complied with the mental health component of the case plan. She did not believe that they could provide for the child's basic needs.

{¶25} K.C. had lived with his parents for most of the first year of his life. For the past two and a half years, however, he had been placed in the temporary custody of CSB. He had been living in a temporary placement with the same foster family and needed a legally secure permanent placement. The parents were not prepared to provide him with a suitable home and CSB had been unable to find any suitable relatives who were willing to do so.

{¶26} The parents have failed to demonstrate that the trial court lost its way in determining that permanent custody was in the best interest of K.C. Mother's second and Father's first assignments of error are overruled.

III.

**{¶27}** The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JAYSEN W. MERCER, Attorney at Law, for Appellant.

JASON WALLACE, Attorney at Law, for Appellant

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

HOLLY FARAH, Guardian ad Litem.